**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LORENZO SMITH, | Case No.: 1:18-cv-01351 - LJO – JLT |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION TO SET ASIDE THE ENTRY OF DEFAULT (Doc. 10) |
| v. | |
| RENT A CENTER, INC., | ORDER TERMINATING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AS MOOT (Doc. 9) |
| Defendant. | |

Lorenzo Smith asserts he suffered racial discrimination and retaliation in violation of federal and state laws and was wrongfully terminated from his position with Rent-A-Center, Inc. Plaintiff seeks an award of default judgment (Doc. 9), while Defendant seeks to set aside the entry of default (Doc. 10)

The Court finds the matters are suitable for decision without oral arguments. Accordingly, the motions are taken under submission pursuant to Local Rule 230(g) and the hearing date of January 30, 2019 is **VACATED**. For the reasons set forth below, Defendant's motion to set aside the entry of default is **GRANTED**, and the motion for the entry of default judgment is terminated as **MOOT**.

**I.    Background and Procedural History**

In June 2018, Plaintiff was transferred by Rent-A-Center ("RAC") from a store in Maryland to a store in Bakersfield, California. (Doc. 1 at 2, ¶ 5) According to Plaintiff, when he applied for the transfer, it was accepted by the district manager, who was named Daniel. (*Id.*)

1

| | |
|---|---|
| 1 | Plaintiff asserts that after the transfer, he "immediately began being treated unfairly and in |
| 2 | violation of established company policies." (Doc. 1 at 2, ¶ 6)  For example, Plaintiff reports he "was |
| 3 | sent alone on deliveries that required at least two employees to deliver large items." (*Id.*)  He alleges |
| 4 | he complained to the local manager, Jose Vasquez, who was also "Plaintiff's immediate supervisor." |
| 5 | (*Id.*, ¶¶ 5-6) Plaintiff alleges he complained about "the fact he was moving heavy items by himself and |
| 6 | this involved an unsafe practice." (*Id.*, ¶ 6)  He contends Jose told Plaintiff that "he is a 'strong |
| 7 | nigger,'" and "[o]n other occasions, Jose told Plaintiff he is a 'strong black guy.'" (*Id.*) |
| 8 | In June 2018—the same month as the transfer—"Plaintiff called defendant's corporate office |
| 9 | to discuss his treatment and how he was being required to engage in unsafe practices and he was told |
| 10 | that someone would contact Plaintiff and this did not occur." (Doc. 1 at 5, ¶ 7)  He alleges after the |
| 11 | complaint, Daniel called Plaintiff into his office and "told Plaintiff that 'people who call corporate |
| 12 | don't last long with the company.'" (*Id.*, ¶ 8) |
| 13 | Plaintiff asserts that in September 2018, he "again complained to the corporate office of RAC |
| 14 | about safety issues at the store and racial issues he had been experiencing." (Doc. 1 at 2, ¶ 9)  He |
| 15 | contends he "also complained about being required to work through lunch without breaks required by |
| 16 | California law." (*Id.*)  According to Plaintiff, his second complaint to the corporate office included |
| 17 | reporting that "he was the only person made to work under such conditions and the only African |
| 18 | American working for the defendant in the entire district and … that Jose had referred to him as a |
| 19 | strong nigger." (*Id.*) |
| 20 | He alleges that he was terminated from his job with RAC on March 13, 2018.[1]  (Doc. 1 at 3, ¶ |
| 21 | 10) He asserts that Daniel said the reason for his termination "was that Plaintiff had threatened |
| 22 | someone at work, which was a false accusation." (*Id.*)  He alleges, "Daniel advised Plaintiff that Jose |
| 23 | had allegedly confirmed the untrue allegation of a threat." (*Id.*)  He contends that "[n]obody working |
| 24 | for defendant made any inquiries of Plaintiff about this allegation prior to the termination decision." |
| 25 | (*Id.*) |
| 26 | Plaintiff believes "Jose informed another employee (Angel) that Plaintiff had threatened |

---

[1] It is unclear whether this is the correct date— or whether the prior dates in the pleading are incorrect— because the alleged termination date is before the alleged transfer date.

another employee," and "that Plaintiff would have someone beat up another employee." (Doc. 1 at 3, ¶ 10) He reports he learned of his accusation "when a police officer visited him at his home the day after his termination." (*Id.*)

Based upon the foregoing facts, Plaintiff filed a complaint on October 1, 2018. (Doc. 1) He identified the following causes of action in his complaint: (1) discrimination in violation of 42 U.S.C. § 1981; (2) wrongful termination in violation of California's Fair Employment and Housing Act ("FEHA"), (3) retaliation in violation of 42 U.S.C. § 1981, (4) retaliation in violation of FEHA, (5) retaliation in violation of Cal. Labor Code §6310, (6) violation of Cal. Labor Code § 1120.5, and (7) wrongful termination in violation of public policy. (*See generally* Doc. 1 at 3-7)

Defendant was served with the summons and complaint on October 5, 2018. (Doc. 5) After Defendant failed to respond to the complaint within the time prescribed by the Federal Rules of Civil Procedure, Plaintiff requested entry of default. (Doc. 6) Accordingly, the Clerk of the Court entered default against Defendant on October 30, 2018. (Doc. 7)

Plaintiff filed a motion for default judgment on December 14, 2018. (Doc. 9). Defendant appeared and move to set aside the entry of default on January 2, 2019. (Doc. 10) Plaintiff filed an opposition to the motion to set aside default on January 16, 2019 (Doc. 12), to which Defendant filed a reply on January 23, 2019 (Doc. 13).

## II.     Legal Standards

The Federal Rules of Civil Procedure govern the entry of default. Once the clerk enters default, "[t]he court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). In evaluating whether good cause exists, the court may consider "(1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether reopening the default judgment would prejudice the other party." *United States v. Mesle*, 614 F.3d 1085, 1091 (9th Cir. 2010) (citing *Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 925-26 (9th Cir. 2004)); *see also TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001). The standard for good cause "is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." *Id.*

When the moving party seeks timely relief from default "and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the default so that cases may be decided on their merits." *Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 945-46 (9th Cir. 1986), quoting *Schwab v. Bullocks Inc.*, 509 F.2d 353, 355 (9th Cir. 1974). A district court's discretion to set aside default pursuant to Rule 55(c) is "'especially broad where, as here, it is entry of default that is being set aside, rather than a default judgment.'" *O'Connor v. State of Nevada*, 27 F.3d 357, 364 (9th Cir. 1994) (quoting *Mendoza*, 783 F.2d at 945 (9th Cir. 1986)) "[J]udgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984).

### III. Discussion and Analysis

#### A. Culpable Conduct

"[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *TCI Group*, 244 F.3d at 697 (quoting *Alan Newman Prods. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) [emphasis in original]). In addition, actions may be culpable when "there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *TCI Group*, 244 F.3d at 698.

Defendant argues its "conduct leading to the entry of default was neither willful nor culpable but was instead based upon an inadvertent error from counsel." (Doc. 10-2 at 3) Robert Friedman explains that although RAC was served through its agent of service on or about October 5, 2018, he was unaware of the complaint until December 28, 2018. (Doc. 10-1 at 2, ¶¶ 3, 5; Doc. 13-1 at 3, ¶ 4) Mr. Friedman reports that before the time to respond had expired, he received an email from a paralegal with RCA with an attached copy of the served complaint, but he failed to take note of it and, consequently, failed to forward it to his staff to calendar the responsive deadline. (Doc. 10-1 at 2, ¶¶ 3-4) It was only after the paralegal again contacted him to inquire about the status of the matter, did he realize that, though he received the email, he failed to take note of it and "missed" it. (Doc. 10 at 2, ¶ 5; Doc. 13-1 at 2 ¶ 4)

Opposing the motion to set aside the entry of default, Plaintiff argues that "it is unbelievable for a corporation as large as Rent A Center to merely email a complaint to counsel without any (1) phone

call discussion (2) without any regular mail and (3) without follow up." (Doc. 12 at 3) According to Plaintiff, Mr. Friedman's declaration "is unclear as to what happened, and this omission is synonymous with culpability under Ninth Circuit standards." (*Id.*, citing *TCI Group*, 244 F.3d at 698-99)

Based upon these facts, it seems clear that Defendant's counsel failed, through inadvertence, to take note of the complaint and, consequently, failed to trigger the calendaring of the response date. Though the Court agrees that counsel should have in place a system that prevents this type of inadvertence, the failure of Defendant to timely respond to the complaint does not appear to be intentional. Rather, Mr. Friedman offers a "credible, good faith explanation" regarding his lack of awareness of the complaint, and there are no facts demonstrating Defendant failed to answer with "any intention to take advantage of the opposing party, interfere with judicial decision making, or otherwise manipulate the legal process." *See TCI Group,* 224 F.3d at 697. Consequently, the actions of the defendant do not rise to the level of culpability.

### B. Meritorious Defense

The primary concern in considering a request to set aside default is whether the defaulting party has a meritorious defense to the action. *Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986). However, the burden to identify a meritorious defense "is not extraordinarily heavy." *TCI Group*, 244 F.3d at 700.

Defendant argues that RAC "has a meritorious defense to any claim being asserted by Plaintiff" because "RAC terminated Plaintiff's employment after Plaintiff engaged in aggressive and threatening behavior at the workplace." (Doc. 10-2 at 6, citing Friedman Decl. ¶ 7) According to Defendant, its evidence "will show that RAC terminated Plaintiff's employment for legitimate and non-discriminatory reasons based on misconduct and his aggressive and threatening behavior in the workplace." (*Id.*, citing Friedman Decl. ¶ 7) The defense notes that the complaint admits that Plaintiff was told he was fired for threatening another employee and this admits of a non-frivolous defense, despite Plaintiff asserts that this explanation is false. (Doc. 10-1 at 3 ¶ 7) Whether it is false or whether it is a legitimate business reason for the firing or a mere pretext for unlawful conduct, are questions to be determined by the trier of fact.

5

In response, Plaintiff asserts that Defendant's contentions are insufficient to establish a meritorious defense. (Doc. 12 at 4-10) Plaintiff contends Defendant was obligated to present evidence of its defenses, and the facts attested to by counsel are insufficient to set aside the entry of default. (*See generally id.*) In support of this contention, Plaintiff cites *Boldon v. Riverwalk Holdings, Ltd.*, 2016 U.S. Dist. LEXIS 30392 (D. Minn. 2016), where the district court found the defendant failed to proffer a meritorious defense, stating:

> The closest that Riverwalk comes to proffering a meritorious defense is its allegation that, "upon information and belief, [Boldon's] purported causes of action may not be allowed to proceed within the United States District Court system as Riverwalk may possess certain rights to move this action to arbitration based on contracts entered into by Plaintiff." (Riverwalk's App. A ¶ 55, Aug. 10, 2015, Docket No. 22.) Yet Riverwalk has not submitted any copies of these contracts; quoted any language from these contracts; given any details about the subject matter of these contracts; identified the parties to these contracts; or provided the dates that these contracts were executed. While the standard for showing a meritorious defense is not high, Riverwalk's unsubstantiated belief that there may be contracts mandating arbitration is insufficient to permit a finding on its behalf.

(Doc. 12 at 5-6, quoting Boldon, 2016 U.S. Dist. LEXIS 30392 at *20-21)

*Boldon* is distinguishable because the standards utilized by the Eighth Circuit and those condoned by the Ninth Circuit differ. The Eight Circuit indicated that it determines whether a meritorious defense exists "by examining whether the proffered evidence would permit a finding for the defaulting party." *Boldon,* 2016 U.S. Dist. LEXIS 30392 at *18 (quoting *Stephenson v. El-Batrawi*, 524 F.3d 907, 914 (8th Cir. 2008)) In contrast, the Ninth requires that "[a]ll that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense …" *Mesle*, 5106 F.3d at 1094. Thus, the defendant does not have to prove by a preponderance of the evidence that the defense will succeed but only that there is "a factual or legal basis for the tendered defense." *Tri-Con't Leasing Corp., Inc. v. Zimmerman*, 485 F.Supp. 496, 497 (N.D. Cal. 1980). Because there is no dispute that RAC offered a legitimate business reason for the firing, the standard set forth by the Ninth Circuit is met.[2]

---

[2] On the other hand, Mr. Friedman attests that there exists an agreement between Plaintiff and RAC to arbitrate their disputes. (Doc. 10-1 at 3 ¶ 7) In its reply, Mr. Friedman provides expanded explanation about the arbitration agreement and provides a copy of the agreements it contends Plaintiff signed. (See Doc. 13-2) Marc Tuckey, the Human Resource Director and Custodian of Records for RAC, asserts that Plaintiff submitted an electronic application to work at RC that "included an arbitration agreement," which was "electronically signed by him on September 12, 2016." (Doc. 13-2,

### C. Prejudice to Plaintiff

To be prejudicial, the setting aside of the judgment must do more harm than merely delaying the resolution of the case or requiring the plaintiff to litigate the action on the merits. *Mesle*, 615 F.3d at 1095; *TCI Group*, 244 F.3d at 701. The relevant inquiry is "whether [the plaintiff's] ability to pursue is claim will be hindered." *Falk*, 739 F.2d at 463. Thus, a delay "must result in tangible harm such as a loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion" for the setting aside of default to be prejudicial to the plaintiff. *TCI Group*, 244 F.3d at 701 (citing *Thomspon v. Am. Home Assur.*, 95 F.3d 429, 433-34 (6th Cir. 1996)).

Plaintiff does not argue that he would suffer any prejudice from the entry of default being set aside. In addition, it does not appear that his ability to pursue his claims were hindered by the delay, as there are no identified tangible harms.

### IV. Conclusion and Order

Defendant has shown good cause for the entry of default to be set aside. The Court finds no indication Defendant acted culpably in failing to answer the complaint and there appears to be a meritorious defense to the claims presented. Further, Plaintiff will not be prejudiced by default being set aside. Therefore, the Court is within its discretion to set aside the entry of default. *See Mendoza*, 783 F.2d at 945-46 (9th Cir. 1986). Based upon the foregoing, the Court **ORDERS**:

1. The motion to set aside the entry of default (Doc. 10) is **GRANTED**;

2. Plaintiff's motion for default judgment (Doc. 9) is terminated as **MOOT**; and

///
///
///
///

---

Tuckey Decl. ¶¶ 7-10) In addition, Mr. Tuckey reports that Plaintiff executed a "Mutual Agreement to Arbitrate Claims…at the inception of his employment on October 4, 2016. (*Id*. at 2, ¶ 6)

However, the Court is not convinced that an agreement to arbitrate is a "meritorious defense" to the action for purposes of setting aside entry of default because it is not a defense to the merits of the action and is a defense only to the forum where the dispute is decided. However, if it can be considered a meritorious defense, Defendant has provided sufficient evidence of the existence of the agreement and bolstered this evidence in the evidence submitted in its Reply to demonstrate the action may not be able to proceed in this Court.

7

3. Defendant **SHALL** file its responsive pleading within seven days of the date of service of this order.

IT IS SO ORDERED.

Dated: __**January 25, 2019**__           _____**/s/ Jennifer L. Thurston**
                                              UNITED STATES MAGISTRATE JUDGE