UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORENZO SMITH,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>RENT-A-CENTER, INC.,<br><br>　　　　　Defendant. | 1:18-CV-01351 LJO JLT<br><br>MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STAY PROCEEDINGS AND COMPEL ARBITRATION<br><br>(ECF No. 17) |

## I. PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Harris to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. Chief District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

1

Civil trials set before Chief Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Chief Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the Nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from inside or outside the Eastern District of California.

## II. INTRODUCTION

Before the Court is defendant Rent-A-Center, Inc.'s ("Defendant") Motion to Dismiss, or in the Alternative, to Stay Proceedings and Compel Arbitration ("Motion to Compel Arbitration") of employment discrimination and related state law claims brought against it by plaintiff Lorenzo Smith ("Plaintiff"). ECF No. 17. Plaintiff opposes the motion, primarily contesting the validity of his electronic signature on each of two arbitration agreements. ECF No. 19 at 2-4. The Court finds it appropriate to rule on Defendant's motion without oral argument. *See* Local Rule 230(g). For the following reasons, the Court DENIES the motion.

## III. BACKGROUND

On October 1, 2018, Plaintiff filed a lawsuit against Defendant, his former employer, alleging violations of 42 U.S.C. § 1981, as well as California's Fair Employment and Housing Act, Labor Code, and public policy. ECF No. 1. In response to Plaintiff's suit, and after a default judgment was set aside, Defendant filed its Motion to Compel Arbitration on January 30, 2019. ECF Nos. 14, 17. In its Motion, Defendant relies on two agreements to arbitrate purportedly signed electronically by Plaintiff, the first as part of the employment application process and the second as part of the on-boarding process at the inception of Plaintiff's employment. ECF No. 17-2 at Exs. 2, 3.

Plaintiff filed an Opposition to Defendant's Motion ("Opposition") on February 13, 2019, arguing, among other things, that both arbitration agreements with Defendant are invalid, as Plaintiff's

electronic signature was pre-populated on the signature lines through his access of Defendant's online employment system using his unique password. ECF No. 19 at 2. Plaintiff further maintains that in no way did he have to enter his name or otherwise acknowledge any agreement itself, and that "he failed to read anything above those [signature] lines." *Id*.

While Defendant disputes Plaintiff's characterization of how his typed name came to appear on the signature lines, Defendant's primary focus is on language found in both the employment application and a separate on-boarding document entitled "Electronic Signature Acknowledgment and Agreement." ECF Nos. 20 at 3-6, 17-2 at Ex. 1. This language, it asserts, supports the finding of valid, electronically signed arbitration agreements between it and Plaintiff. ECF No. 20 at 4-6. The employment application arbitration agreement states, in part:

> DO NOT E-SIGN UNTIL YOU HAVE CAREFULLY READ THE ABOVE ARBITRATION AGREEMENT. BY ELECTRONICALLY SIGNING BELOW, YOU ARE AGREEING THAT YOU HAVE CAREFULLY READ THIS ARBITRATION AGREEMENT AND YOU ARE GIVING UP YOUR RIGHT TO A COURT OR JURY TRIAL, AND THAT PURSUANT TO THE TERMS OF THIS ARBITRATION AGREEMENT, YOU AND THE COMPANY ARE AGREEING TO ARBITRATE DISPUTES COVERED BY THIS ARBITRATION AGREEMENT.

ECF No. 20 at 4. The Electronic Signature Acknowledgment and Agreement, submitted with a second arbitration agreement during on-boarding, in turn, provides:

> …
>
> I hereby certify that I understand my password will be used as my electronic signature to sign Rent-A-Center Inc.'s employment consents and acknowledgements during the Onboarding Process.
>
> I understand and certify that whenever I electronically sign a document it be presumed to be my signature and the burden of proof for repudiation of this electronic signature will be on myself as the custodian of my password.
>
> I understand and certify that my electronic signature shall be evidence of my intent to sign the document and to adhere to the company policies and work rules contained in the document.

> I understand and certify that my electronic signature will signify my
> understanding of the information contained in the signed document.
> …
>
> **Electronic Signature Notification:**
>
> Your password is used as your legal signature. By entering your password
> you understand that you are signing this document and that you
> understand its contents and your responsibilities related to the document.

ECF No. 17-2 at Ex. 1. Defendant offers both arbitration agreements and the declaration of its Human Resources Director and Custodian of Records, Marc Tuckey ("Tuckey"), as evidence in support of its position, as well. ECF Nos. 17-2 at Exs. 1-3.

Tuckey's declaration asserts that Plaintiff signed the onboarding arbitration agreement "by entering his unique and secret password." ECF No. 17-2 at ¶ 6. Tuckey's declaration is silent as to the exact method used to sign the employment application arbitration agreement, but regarding that agreement only, Tuckey adds that Plaintiff was required to complete other, "unique information …within his personal knowledge" for the application, such as contact information, education, and work history. *Id.* at ¶¶ 7-10. When the application and arbitration agreement were submitted electronically, "the arbitration agreement captured the date it was signed and captured the unique IP Address from which" it was sent. *Id.* at ¶ 9.

### IV. <u>LEGAL STANDARD</u>

The Federal Arbitration Act ("FAA," "the Act") was enacted "in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Under the Act, "[a] written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects "a liberal federal policy favoring arbitration." *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

Two provisions of the FAA establish procedures through which federal courts implement the substantive rule of the Act. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010). Under these provisions, courts may stay an action brought "upon any issue referable to arbitration under an agreement in writing for such arbitration," or order arbitration to proceed when a party is "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate." 9 U.S.C. §§ 3, 4. However, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)).

Fundamentally, "arbitration is a matter of contract." *Rent-A-Center, West, Inc.*, 561 U.S. at 67. Courts are required to enforce arbitration agreements "according to their terms." *Id.* at 68. Because an agreement to arbitrate is a matter of contract, courts "generally … apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Importantly, courts are "limited to determining (1) whether a valid agreement to arbitrate exists, and, if it does, (2) whether a valid agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "If there is a genuine dispute of material fact as to any of these queries, a district court should apply a 'standard similar to the summary judgment standard of [Federal Rule of Civil Procedure 56]'." *Lopez v. Terra's Kitchen, LLC*, 331 F. Supp. 3d 1092, 1097 (S.D. Cal. 2018) (quoting *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004)). "The district court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Three Valleys Mun. Water Dist. V. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1141 (9th Cir. 1991) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51 (3d Cir. 1980)).

# V. ANALYSIS

Plaintiff raises several issues as he urges this Court to find unenforceable the arbitration agreements electronically submitted to Defendant.[1] Specifically, Plaintiff argues that: (1) his electronic signatures are invalid because mere use of his password within Defendant's employment application and onboarding websites auto-populated the necessary signatures; (2) use of a password does not constitute a proper electronic signature in principle; (3) Plaintiff did not read the content above the signature lines; (4) arbitration agreements in applications are not binding; (5) the application and arbitration documents submitted by Defendant should be excluded from the Court's consideration as hearsay; and (6) inputting a password cannot validly waive a person's Seventh Amendment jury trial right. ECF No. 19.

After considering all facts and relevant law, the Court finds arguments (2) through (6) to be wholly without merit. If Plaintiff provided valid consent to the agreement(s), it is of no moment that he alleges he did not read them, *Cox v. Bonni*, 30 Cal. App. 5th 287, 301 (2018) ("Ordinarily when a person with capacity of reading and understanding an instrument signs it, he may not, in the absence of fraud, imposition or excusable neglect, avoid its terms on the ground he failed to read it before signing it"); there is ample authority to support the proposition that an arbitration agreement in an employment application may be enforced, *Jackson v. TIC—The Indus. Co.*, No. 1:13-CV-02088-AWI-JLT, 2014 WL 1232215, at *4-12 (E.D. Cal. March 24, 2014); the relevant documents are supported by a declaration from a custodian of records establishing their admissibility under the business records exception, Fed. R. Evid. 803(6); and there is absolutely no support for Plaintiffs' Seventh Amendment theory, *Commodity Futures Trading Com'n v. Schor*, 478 U.S. 833, 848-49 (1986) ("Article III's guarantee of an impartial and independent federal adjudication is subject to waiver"). The Court does, however, find that Plaintiff's electronic signatures have not been sufficiently authenticated based on the declaration submitted by Defendant.

---

[1] Plaintiff's arguments appear to veer back and forth across the various documents, without clearly distinguishing among them. Because some of his arguments reasonably apply to all of the documents, the Court will address them in that manner.

6

A. **Authentication of the Electronic Signatures**

Plaintiff avers that his purported electronic signatures on the two arbitration agreements are insufficient to support enforcement of the agreements because his signature was automatically populated on the documents when Plaintiff used his password on Defendant's website, and because use of a password does not sufficiently constitute an "act" of the signator as contemplated under California law. ECF No. 19 at 2-4. Defendant disputes that Plaintiff's signature was automatically populated, but argues that, nonetheless, Defendant completed an online form advising him that his password served as his electronic signature.[2] ECF No. 20 at 4-6. The import of using his credentials was clear to Plaintiff, and Plaintiff actively inputted his required credentials to sign the arbitration agreements. *Id.*

A defendant may meet its "initial burden to show an agreement to arbitrate" merely "by attaching a copy of the arbitration agreement purportedly bearing the opposing party's signature" to the motion to compel arbitration. *Espejo v. S. California Permanente Med. Grp.*, 246 Cal. App. 4th 1047, 1060 (2016). Once a plaintiff "challenge[s] the validity of that signature in his opposition," a defendant is "then required to establish by a preponderance of the evidence that the signature [is] authentic." *Id.*

California has enacted the Uniform Electronic Transaction Act, effective January 1, 2000, which recognizes the validity of electronic signatures. Cal. Civ. Code § 1633.1 *et seq.* The Act provides that a "signature may not be denied legal effect or enforceability solely because it is in electronic form." Cal. Civ. Code § 1633.7. Further, "[a]n electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." Cal. Civ. Code. § 1633.9.

Here, to meet its initial burden of demonstrating an agreement to arbitrate, Defendant submitted copies of the purported agreements with its Motion to Compel Arbitration. The agreements appear to

---

[2] Defendant's filings make little or no mention of Plaintiff's username. The Court cannot determine whether Plaintiff's username was created by him or assigned to him by Defendant's system.

bear Plaintiff's electronic signature, and as noted above, California has recognized by statute the validity of electronic signatures. Defendant has also submitted the Electronic Signature Acknowledgment and Agreement, pertinent to the onboarding arbitration agreement, and the declaration of Defendant's custodian of record to authenticate the arbitration agreements (to be discussed in further detail below). Defendant has met its initial burden.

Plaintiff, however, has challenged the validity of his signatures on those agreements in his Opposition. The Court construes the thrust of Plaintiff's challenge to be aimed at the authenticity of his signatures.[3] Defendant now bears the burden of proving by a preponderance of the evidence that the signatures on the arbitration agreements are authentic.

Under applicable California law, *supra*, an electronic signature can be evidenced through an "act" of the person, which may include "a showing of the efficacy of any security procedure" used to verify the identity of the signator. Cal. Civ. Code. § 1633.9. Both California state and federal courts have addressed the use of a password in this context of a person's "act" related to an electronic signature.

Courts have found that evidence of use of a unique, secure username and password may sufficiently authenticate a signature when that signature is a typed name inputted by the user. *See, e.g., Espejo*, 246 Cal. App. 4th at 1062. Similarly, the use of a checkbox to show acknowledgment and agreement with a specific policy document has also been found sufficient where a unique, secure username and password was used to access the website containing the policy document. *See, e.g., Tanis v. Southwest Airlines, Co., et al*, No. 18-CV-2333-BAS-BGS, 2019 WL 1111240, at *5-7 (S.D. Cal. March 11, 2019). Likewise, the act of inputting a username and password, itself, has been found

---

[3] It should be noted that the only evidence Plaintiff offered in support of his Opposition was his own <u>unsigned</u> declaration. ECF No. 19-1. This defect was never cured. To the extent that a "naked" assertion may be insufficient to raise a genuine issue of material fact, Plaintiff's unsigned declaration does not affect Plaintiff's ability to challenge Defendant's authentication of the electronic signatures. *See, e.g., Tanis v. Southwest Airlines, Co., et al*, No. 18-CV-2333-BAS-BGS, 2019 WL 1111240, at *6 (S.D. Cal. March 11, 2019).

8

sufficient to constitute an electronic signature. *See, e.g., Hose v. Washington Inventory Services, Inc.*, No. 14-CV-2869-WQH-WVG, 2016 WL 6427810, at *6-7 (S.D. Cal. August 30, 2016); *Taft v. Henley Enterprises, Inc.*, No. SACV 15-1658-JLS (JCGx), 2016 WL 9448485, at *1-4 (C.D. Cal. March 2, 2016).

In all of these cases, authentication of the electronic signatures turned on the indicia of reliability demonstrated in the processes associated with use of the username and password. These processes, and attendant explanations, are fact-specific and contextual; they may take many forms yet still satisfy the burden of authentication. While it is true that some "courts have found the declaration of [ ] human resource employees sufficient to authenticate electronic signatures," *Tagliabue v. J.C. Penney Corp., Inc.*, No. 1:15-CV-01443-SAB, 2015 WL 8780577, at *2 (E.D. Cal. Dec. 15, 2015), the *content* of such declarations, rather than their mere existence, is determinative for clearing the authentication threshold.

For example, when authenticating its arbitration agreement, the defendant in *Tagliabue v. J.C. Penney Corp., Inc.* submitted the declarations of two Senior Human Resources Managers, one attesting that the plaintiff had signed the agreement and the other "explaining the new hire onboarding and current employee processes for completing company policies." No. 1:15-CV-01443-SAB, 2015 WL 8780577, at *3. This included information regarding "20 discrete steps that a new hire has to follow and complete." *Id*. The declarant detailed that "these steps have to be completed in order and the new hire cannot proceed to the next step until all the previous steps are completed. The arbitration agreement was the tenth step …" *Id*. (internal quotations omitted).

Similarly, in *Espejo*, the court found that the defendant had authenticated sufficiently an electronic signature when the defendant "detailed [the defendant's] security precautions regarding transmission and use of an applicant's unique user name and password, as well as the steps an applicant would have to take to place his or her name on the signature line of the employment agreement …." *Espejo*, 246 Cal. App. 4th at 1062. The declarant averred: " 'Given this process for signing documents

and protecting the privacy of the information with unique and private user names and passwords, the electronic signature was made by [the plaintiff]' … at the date, time, and IP address listed on the documents." *Id*.

As another example, in *Taft*, the declaration of the defendant's Human Resources Manager:

> explain[ed] the new hire onboarding process, which consists of discrete steps that must be completed in order. An audit trail documents the steps that [the plaintiff] took in her onboarding process in reverse chronological order, and it demonstrates that she electronically reviewed and signed the arbitration agreement on September 4, 2014. A new hire can proceed to the next step only after completing all the previous steps of the process, and it is notable that [the plaintiff] appears to have executed other onboarding documents before *and after* she signed the arbitration agreement. Finally, [the d]efendant provides evidence that each new hire creates a unique username and password that must be entered to access and execute the onboarding materials.

No. SACV 15-1658-JLS (JCGx), 2016 WL 9448485, at *3 (omitting internal citations) (emphasis original).

By contrast, in *Ruiz v. Moss Brothers Auto Group*, 232 Cal. App. 4th 836 (2014), a California court of appeal found that the defendant had not authenticated sufficiently an arbitration agreement after submitting two declarations that "summarily asserted" the plaintiff electronically signed the agreement. 232 Cal. App. 4th at 843-44. The defendant asserted that an arbitration agreement is presented to "all persons who seek or seek to maintain employment" with the defendant, and "[e]ach employee is required to log into the [defendant's] HR system—each with his or her unique login ID and password— to review and electronically execute" the agreement. *Id.* at 839-41.

Considering both declarations in *Ruiz*, as well as prior cases, the court found that the declarations "never explained how [the plaintiff's] printed electronic signature, or the date and time printed next to the signature, came to be placed on the [ ] agreement" or how the defendant "ascertained that the electronic signature … was the act of" the plaintiff. *Ruiz*, 232 Cal. App. 4th at 839. The court noted that authentication "was not a difficult evidentiary burden to meet, but it was not met here." *Id.* at 844.

The same is true in the matter before this Court. The parallels are striking between the declaration of Defendant's custodian of records and the declarations in *Ruiz*. Here, Tuckey summarily asserts that "the [Electronic Signature and Acknowledgment Agreement] process involves the employee creating a unique and secret password, which serves as the employee's 'electronic signature'. [Plaintiff] signed the Electronic Signature and Acknowledgement Agreement by entering his unique and secret password" on October 4, 2016. ECF No. 17-2 ¶ 4.

Nowhere in this statement does Tuckey explain how he inferred that it was Plaintiff who created and entered the password, how he ascertained that the electronic signature was the act of Plaintiff, or how he determined that the form was signed on October 4, 2016. No steps are detailed; no audit trail discussed. It is, in fact, entirely unclear at what point Defendant entered his password in order to sign the agreement, and whether creating his password and later signing the arbitration agreement were two of several steps in his onboarding or the only onboarding steps he was asked to complete. There is no discussion of timestamps or IP addresses. There is also no mention of Plaintiff's username.

The assertion from Tuckey is deficient; it states a conclusion without providing any steps to illuminate how Defendant arrived at that conclusion. Tuckey's assertion is the only substance offered to authenticate the Electronic Signature Agreement that formed the basis for Plaintiff's signature on the onboarding arbitration agreement. Because of the critical gap in evidence supporting the Electronic Signature Acknowledgment and Agreement, the Court finds that it is not sufficiently authenticated. That is, Defendant has not demonstrated by a preponderance of the evidence that the electronic signature was Plaintiff's act.

Next, Tuckey's declaration states that "[Plaintiff] electronically signed the [onboarding] Arbitration Agreement by entering his unique and secret password" on October 4, 2016. ECF No. 17-2 ¶ 6. At the risk of repetition, the Court notes again that Defendant has failed to indicate whether—and if so, how—Defendant was able to ascertain that Plaintiff was the person who electronically signed the

agreement, other than Tuckey's conclusory assertion that Plaintiff signed the agreement. Defendant has not elaborated any security measures for protecting passwords, or for transmitting and storing information such as passwords and forms. Defendant has not stated whether a backend user might have access to Plaintiff's password or might have the ability to alter his agreements once submitted to Defendant. Once more, Defendant has provided no explanation for Tuckey's assertion that the agreement was signed on October 4, 2016. The Court cannot determine, without reading into timestamps that have not been explained or authenticated, whether this onboarding arbitration agreement was signed before or after the Electronic Signature and Acknowledgment Agreement. For these reasons, and those raised above, Defendant has failed to authenticate the onboarding arbitration agreement by a preponderance of the evidence.

Finally, the Court turns to the arbitration agreement submitted with Plaintiff's application for employment. While this is a slightly closer call, the Court finds that Defendant has failed to authenticate the electronic signature as the act of Plaintiff by a preponderance of the evidence.

With respect to the agreement in the application, Tuckey's declaration states "To complete and submit the electronic application and arbitration agreement, [Plaintiff] was required to create a personalized unique password, and submit unique information that is within his personal knowledge," such as contact information, education, and work history. ECF No. 17-2 ¶ 7. While Tuckey concludes that Plaintiff completed the application and "electronically signed the application arbitration agreement and submitted it," Tuckey does not explain where or at what point Plaintiff signed this agreement, which leaves a gap in evidence. ECF No. 17-2 ¶ 9. Indeed, more importantly, Tuckey fails to make explicit *how* Plaintiff signed the agreement; it is in Defendant's Reply Memorandum that one learns Plaintiff did not use his password to sign the employment application arbitration agreement but instead, purportedly, was required to type his name.[4] ECF No. 20 at 5. No explanation for how this signature and the

---

[4] Quite confoundingly, it is entirely unclear whether Plaintiff created two passwords, one each for the application and

12

agreement were submitted is provided.

Though the fact that some of Plaintiff's personal information was inputted and submitted with the arbitration agreement would tend to support Defendant's position, Defendant fails to connect the steps between entering that information and completing the arbitration agreement, leaving another gap in evidence. For instance, the Court has no information before it whether the application and the arbitration agreement appeared on one screen, which would have required Plaintiff to scroll to a specific spot to sign the agreement (for instance, the end of the application), or whether the application and the arbitration agreement were broken up over several screens, which might have allowed Plaintiff to pick and choose which screens he visited and completed.

Similarly, Tuckey states that the employment application arbitration agreement "captured the date it was signed and … the unique IP Address" from which it was submitted. ECF No. 17-2 ¶ 9. Had Tuckey elaborated on how this information was initially acquired and later ascertained for his declaration, and how this information better links the employment application arbitration agreement to Plaintiff, Defendant may have succeeded in authenticating the agreement. But as with the previous agreements, Defendant's efforts at authentication fall short of reaching the preponderance of evidence required.

## VI. **CONCLUSION AND ORDER**

For the foregoing reasons, Defendant's Motion to Compel Arbitration is DENIED. Defendant has failed to authenticate sufficiently Plaintiff's electronic signatures on the arbitration agreements. Accordingly, the Court cannot find valid arbitration agreements to enforce at this time.

IT IS SO ORDERED.

Dated: **March 20, 2019**        **/s/ Lawrence J. O'Neill**
                                  UNITED STATES CHIEF DISTRICT JUDGE

---

onboarding processes, or used the same password for both processes.

13