# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LORENZO SMITH,** | 1:18-CV-01351 LJO JLT |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO COMPEL ARBITRATION** |
| v. | |
| **RENT-A-CENTER, INC.,** | |
| **Defendant.** | **(ECF No. 33)** |

## I. INTRODUCTION

Before the Court is defendant Rent-A-Center, Inc.'s ("Defendant") renewed Motion to Compel Arbitration ("Motion to Compel Arbitration") of employment discrimination and related state law claims brought against it by plaintiff Lorenzo Smith ("Plaintiff"). ECF No. 33-1. Plaintiff opposes the motion. ECF No. 34. The Court finds it appropriate to rule on Defendant's motion without oral argument. *See* Local Rule 230(g). For the following reasons, the Court GRANTS the motion.

## II. BACKGROUND

On October 1, 2018, Plaintiff filed a lawsuit against Defendant, his former employer, alleging violations of 42 U.S.C. § 1981, as well as California's Fair Employment and Housing Act, Labor Code, and public policy. ECF No. 1. In response to Plaintiff's suit, and after a default judgment was set aside, Defendant filed its Motion to Compel Arbitration on January 30, 2019 ("first motion"). ECF Nos. 14, 17. Plaintiff filed an Opposition to Defendant's Motion on February 13, 2019, arguing, among other

1

things, that his alleged electronic signatures were not authenticated sufficiently by Defendant under California law. ECF No. 19 at 2. The Court ruled on March 21, 2019, denying Defendant's motion based on the Court's finding that Defendant had failed to authenticate Plaintiff's signatures on the purported agreements to arbitrate. The Court did not reach the enforceability of the agreements themselves.

On April 26, 2019, Defendant filed a second Motion to Compel Arbitration ("second motion"), which includes substantial documentation not included with its first motion. ECF Nos. 33-1 through 33-4. Plaintiff's Opposition, filed on May 7, 2019, argues jurisdictional and procedural issues, and has seemingly abandoned contestation of the signatures themselves. ECF No. 34. Defendant's reply was filed on May 21, 2019. ECF No. 37.

### III. **LEGAL STANDARD**

The Federal Arbitration Act ("FAA," "the Act") was enacted "in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Under the Act, "[a] written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects "a liberal federal policy favoring arbitration." *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

Two provisions of the FAA establish procedures through which federal courts implement the substantive rule of the Act. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010). Under these provisions, courts may stay an action brought "upon any issue referable to arbitration under an agreement in writing for such arbitration," or order arbitration to proceed when a party is "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate." 9 U.S.C. §§ 3, 4. However, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)).

Fundamentally, "arbitration is a matter of contract." *Rent-A-Center, West, Inc.*, 561 U.S. at 67. Courts are required to enforce arbitration agreements "according to their terms." *Id.* at 68. Because an agreement to arbitrate is a matter of contract, courts "generally … apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Importantly, courts are "limited to determining (1) whether a valid agreement to arbitrate exists, and, if it does, (2) whether a valid agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "If there is a genuine dispute of material fact as to any of these queries, a district court should apply a 'standard similar to the summary judgment standard of [Federal Rule of Civil Procedure 56]'." *Lopez v. Terra's Kitchen, LLC*, 331 F. Supp. 3d 1092, 1097 (S.D. Cal. 2018) (quoting *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004)). "The district court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Three Valleys Mun. Water Dist. V. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1141 (9th Cir. 1991) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51 (3d Cir. 1980)).

## IV. ANALYSIS

Defendant seeks to compel arbitration at this time, based on the expanded record supplied to authenticate the validity of Plaintiff's electronic signatures on three documents, comprising two agreements to arbitrate. *See generally* ECF No. 33-1. Defendant asserts that any evidentiary deficiency in their previous motion is now cured. ECF No. 33-1 at 5. Plaintiff opposes Defendant's second motion on three grounds, contending that: 1) this Court lacks jurisdiction, as Defendant took an interlocutory appeal from the Court's previous decision; 2) Defendant's motion fails to comply with Local Rule 230(k) and Ninth Circuit precedent regarding motions for reconsideration; and 3) the affidavit of Defendant's Human Resource Director relies on hearsay and lacks foundation. *See generally* ECF No.

34. For the following reasons, the Court GRANTS Defendant's second motion to compel arbitration, finding Plaintiff's opposition to be without merit and that the parties entered into two enforceable arbitration agreements.

**A.      Jurisdiction**

Plaintiff contends that this Court does not have jurisdiction to review the instant motion because Defendant took an interlocutory appeal from the Court's decision in the first motion, which Plaintiff purports divested this Court of jurisdiction over Defendant's second motion. ECF No. 34 at 1-3. Defendant counters that this motion seeks a ruling on the ultimate question not reached by the Court in the previous motion—whether a binding agreement exists between parties that compels arbitration in this matter; whereas, the appeal concerns the Court's finding that Defendant's evidence authenticating an electronic signature in the previous motion was insufficient. ECF No. 37 at 2-4. Defendant asserts that this Court can consider its renewed motion to compel arbitration on a new body of evidence, or in the alternative, the Court can enter an indicative ruling under Rule 62.1. ECF No. 37 at 5-7.

When an interlocutory appeal is filed, trial courts are divested of jurisdiction only over "the precise issue appealed." *United States v. Cheely*, 814 F. Supp. 1430, 1434 (D. Alaska 1992) (citing *Britton v. Co-op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990)); *see also Pipe Trades Council of N. Cal., U.A. Local 159 v. Underground Contractors Ass'n of N. Cal.*, 835 F.2d 1275, 1277 (9th Cir. 1987), *opinion amended on denial of reh'g*, (9th Cir. Dec. 12, 1988) (explaining district court denied second motion to compel arbitration for lack of jurisdiction, while first motion was on appeal, when second motion concerned the exact same underlying legal question). In this case, the precise subject matter on appeal is whether Defendant properly authenticated an electronic signature based on the evidence presented in its first motion. In the instant motion, Defendant is asking this Court to rule on the enforceability of an arbitration agreement purportedly entered into by the parties, supported by new evidence not previously presented to the Court. ECF No. 33-1. For that reason, the Court has not been divested of jurisdiction in relation to Defendant's second motion.

**B.** **The Motion under Local Rules and Ninth Circuit Precedent**

Plaintiff next contends that Defendant's second motion should be denied for failing to comply with Local Rule 230(k) and for failing to comport with Ninth Circuit precedent.[1] ECF No. 34 at 3-4. Both assertions rest on casting the instant motion as one for reconsideration, which Defendant contests. ECF No. 37 at 2-4. The instant motion is not one for reconsideration, according to Defendant, as the Court never ruled on the ultimate question of the last motion—whether the parties entered into an enforceable agreement that compels Plaintiff to arbitrate his claims. *Id.*

The motion before the Court is not correctly cast as a motion for reconsideration: the Court is not being asked to reconsider its previous ruling on the insufficiency of evidence authenticating Plaintiff's signature. Further, neither Rule 59 nor Rule 60 of the Federal Rules of Civil Procedure, each a vehicle for reconsideration requests, is appropriately applied in this case. Instead, this is a motion seeking to reach the ultimate question the Court did not reach in the last motion, as explained above. Defendant is correct that the Court's ruling on its previous motion did not preclude it from bringing the instant motion. This Court's conclusion is supported by other district court cases. *See, e.g., Maxit Designs, Inc. v. Coville, Inc.*, No. CIV. S-05-1040 WBS DAD, 2006 WL 2734366 (E.D. Cal. Sept. 25, 2006); *Lucas v. Hertz Corp.*, 875 F. Supp. 2d 991 (N.D. Cal. 2012) (denying first motion to compel for evidentiary problems and granting second motion); *Bernal v. Southwestern & Pacific Specialty Finance, Inc.*, No. C 12-05797 SBA, 2014 WL 1868787 (N.D. Cal. May 6, 2014).

For these reasons, Local Rule 230(k) and Ninth Circuit precedent on the procedures and requirements for filing motions for reconsideration do not apply here.

---

[1] The Ninth Circuit precedent cited by Plaintiff is, in fact, a case decided by the District Court for the Central District of California. The case examined a local rule of that district. Indeed, the language quoted by Plaintiff as a holding of the Ninth Circuit is taken verbatim from the district court case without the benefit of quotations marks and is actually the text of the local Central District rule. When Plaintiff writes that the district court cited a Ninth Circuit case, *Thomas v. Bible*, 983 F.2d 152 (9th Cir. 1993), in support of the language of the local rule, that is also entirely mistaken. The district court cited *Thomas* in support of a different proposition.

**C.     The Motion and Hearsay**

Plaintiff's final contention is that Defendant's second motion relies on an affidavit from one of its Human Resource Directors, Marc Tuckey ("Tuckey"), that recites hearsay and lacks foundation.[2] ECF No. 34 at 4. The affidavit describes an electronic system used by Defendant's company and Tuckey in his day-to-day employment, ECF No. 33-3 at 1-12, but Plaintiff avers that Tuckey cannot properly describe the electronic system and its processes, as the software was created by a third-party company. ECF No. 34 at 4.

Plaintiff misunderstands the information Tuckey is relating. Tuckey's affidavit relates his personal knowledge of his use of the software to access and review individuals' application and employment information, including electronic signatures, submitted to Defendant's company through a web-based interface. ECF No. 33-3 at 1-12. Tuckey describes the typical results provided by the system and his experience with the system's reliability, including built in safeguards to ensure privacy and prevent tampering. *Id*. These safeguards include the inability to submit either an application or the onboarding paperwork, both of which include an agreement to arbitrate, without affirmatively acknowledging review and receipt of the information. *Id*. The application and onboarding paperwork are submitted in their entirety, once all information is reviewed by the end user, and use of a unique username and protected password are integral to access, completion, and submission of both. *Id*. Employees of Defendant's company cannot access a user's password in order to manipulate the submitted information. *Id*.

Tuckey's affidavit does not relate hearsay or lack foundation. It is based on Tuckey's personal knowledge and experience, as a Human Resource Director and as Custodian of Records. That, coupled with copious detail of the system's operation and safeguards, renders the affidavit suitable for authenticating Plaintiff's electronic signature on multiple documents, including two arbitration

---

[2] Plaintiff did not contest the affidavit of the second employee, Jared Dale, or any of the supporting documents submitted.

6

agreements and an agreement acknowledging the use of electronic signatures.

**D.     Authentication of the Electronic Signatures**

Plaintiff previously contested the authentication of his electronic signatures. ECF No. 19 at 2-4. While Plaintiff has not renewed that objection in response to Defendant's current motion, the Court must evaluate anew Defendant's request to compel arbitration based on the current filing and in light of its previous decision.

**1.     Initial Burden**

A defendant may meet its "initial burden to show an agreement to arbitrate" merely "by attaching a copy of the arbitration agreement purportedly bearing the opposing party's signature" to the motion to compel arbitration. *Espejo v. S. California Permanente Med. Grp.*, 246 Cal. App. 4th 1047, 1060 (2016). Once a plaintiff "challenge[s] the validity of that signature in his opposition," a defendant is "then required to establish by a preponderance of the evidence that the signature [is] authentic." *Id*.

California has enacted the Uniform Electronic Transaction Act, effective January 1, 2000, which recognizes the validity of electronic signatures. Cal. Civ. Code § 1633.1 *et seq.* The Act provides that a "signature may not be denied legal effect or enforceability solely because it is in electronic form." Cal. Civ. Code § 1633.7. Further, "[a]n electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." Cal. Civ. Code. § 1633.9.

Here, Defendant has submitted copies of the purported agreements to meet its initial burden of demonstrating an agreement to arbitrate. ECF No. 33-3 at Exs. L and R. The agreements bear an electronic signature in Plaintiff's name, and as noted above, California has recognized by statute the validity of electronic signatures. Defendant has also submitted an Electronic Signature Acknowledgment and Agreement, ECF No. 33-3 at Ex. Q, pertinent to one of the arbitration agreements, and declarations of two of Defendant's human resource employees, ECF Nos. 33-2 at 1-10 and 33-3 at 1-12, as well as

supporting materials. Defendant has met its initial burden.

### 2. **<u>When Authentication of a Signature Is Challenged</u>**

Under applicable California law, *supra*, an electronic signature can be evidenced through an "act" of the person, which may include "a showing of the efficacy of any security procedure" used to verify the identity of the signator. Cal. Civ. Code. § 1633.9. Both California state and federal courts have addressed the use of a password in this context of a person's "act" related to an electronic signature. Courts have found that evidence of use of a unique, secure username and password may sufficiently authenticate a signature when that signature is a typed name inputted by the user. *See, e.g., Espejo*, 246 Cal. App. 4th at 1062. Similarly, the use of a checkbox to show acknowledgment and agreement with a specific policy document also has been found sufficient where a unique, secure username and password was used to access the website containing the policy document. *See, e.g., Tanis v. Southwest Airlines, Co., et al*, No. 18-CV-2333-BAS-BGS, 2019 WL 1111240, at *5-7 (S.D. Cal. March 11, 2019). Likewise, the act of inputting a username and password, itself, has been found sufficient to constitute an electronic signature. *See, e.g., Hose v. Washington Inventory Services, Inc.*, No. 14-CV-2869-WQH-WVG, 2016 WL 6427810, at *6-7 (S.D. Cal. August 30, 2016); *Taft v. Henley Enterprises, Inc.*, No. SACV 15-1658-JLS (JCGx), 2016 WL 9448485, at *1-4 (C.D. Cal. March 2, 2016).

In all these cases, authentication of the electronic signatures turned on the indicia of reliability demonstrated in the processes associated with use of the username and password. These processes, and attendant explanations, are fact-specific and contextual; they may take many forms yet still satisfy the burden of authentication. While it is true that some "courts have found the declaration of [ ] human resource employees sufficient to authenticate electronic signatures," *Tagliabue v. J.C. Penney Corp., Inc.*, No. 1:15-CV-01443-SAB, 2015 WL 8780577, at *2 (E.D. Cal. Dec. 15, 2015), the *content* of such declarations, rather than their mere existence, is determinative for clearing the authentication threshold.

Here, Defendant has provided two affidavits from employees, one from a Human Resource

8

System Administrator and one from a Human Resource Director, who is also the Custodian of Records. ECF Nos. 33-2 at 1-10 and 33-3 at 1-12. The two affidavits together provide a comprehensive picture of the electronic application and onboarding processes that include, as a component part of each, signing an arbitration agreement. Tuckey's affidavit details the process for creating a unique password and username for each applicant to Defendant's company. ECF No. 33-3 at 2-3. That password is protected, private, and inaccessible to Defendant's employees. ECF Nos. 33-2 at 1-10, 33-3 at 6. An applicant must supply a personal email address for purposes of retrieving a lost password. ECF No. 33-3 at 6-7. In completing the application, a user must review separate screens in succession, and the application cannot be submitted until all screens have been reviewed. *Id*. at 3-5, 7-8. One of the screens includes the arbitration agreement and a signature box that requires an entry to proceed. *Id*. at 3-5. Other screens request personal information, such as address, education, and work history. *Id*. at 3-5.

Once logon information is created, according to the affidavits, a user of the application system will continue to use the same information for on-boarding, if the applicant is offered employment with Defendant's company. ECF Nos. 33-2 at 2-3, 33-3 at 9. When a document is completed and submitted electronically, the date and time of submission, and IP address from which it was submitted, is recorded. ECF Nos. 33-2 at 10. In Plaintiff's case, Defendant can demonstrate that Plaintiff completed his application with Defendant's company through the company's mobile site. ECF No. 33-3 at 6-7. Plaintiff entered information unique to himself and was required to type in his name[3] as a signature to the arbitration agreement before being able to submit the application. *Id*. at 6-7. Additionally, Defendant's application requires a person to complete one screen at a time, each requesting specific information, and necessitates an applicant click a "Save and Continue" button at the end of each screen before being able to access the next. *Id*. at 3-5.

When Plaintiff electronically signed the second arbitration agreement during onboarding,

---

[3] At the time Plaintiff completed the application process, the system allowed any entry in the signature box. The entry did not have to be the applicant's name. ECF No. 33-3 at 5.

9

Defendant's software demonstrates that the onboarding documents, including the arbitration agreement, were submitted from a company computer at one of Defendant's offices, which is consistent with company policy of having new employees complete onboarding documents during an on-site session. ECF Nos. 33-2 at 10, 33-3 at 9. Once more, Plaintiff had to provide highly personal information, required by his entry of data into various forms such as a direct deposit enrollment, W-4, and I-9. ECF No. 33-3 at 8. Without completing an electronic signature agreement, Plaintiff would not have been able to access any additional forms in the series of onboarding paperwork. *Id*. Likewise, had Plaintiff failed to complete the second arbitration agreement, at issue in this case, he would have received an error message and would not have been able to proceed with his electronic paperwork. *Id*. at 9-11. An employee enters his or her password in order to "sign" each document. *Id*. at 8-11.

The information provided by Defendant in support of its renewed motion more than satisfies its burden. Unlike the previous barebones information submitted with Defendant's first motion, which relied heavily on conclusory statements, the information provided now details the process of creating a username and password; completing the application, which includes an arbitration agreement; and completing the onboarding process, which includes an electronic signature agreement and a second arbitration agreement separate from that included during the application process. The information tracks other cases in which courts have found sufficient evidence for authentication of electronic signatures on arbitration agreements. *Tagliabue*, No. 1:15-CV-01443-SAB, 2015 WL 8780577, at *3 (finding evidence sufficient based on two employee declarations "explaining the new hire onboarding … processes," including the "20 discrete steps that a new hire has to follow and complete," in order, where the arbitration agreement was "the tenth step"); *Espejo*, 246 Cal. App. 4th at 1062 (finding sufficient authentication where the defendant "detailed [the defendant's] security precautions regarding transmission and use of an applicant's unique user name and password, as well as the steps an applicant would have to take to place his or her name on the signature line of the employment agreement").

In light of all of the above, the Court finds that two valid agreements to arbitrate exist between

Plaintiff and Defendant. The Court turns next to assessing briefly whether Plaintiff's claims are arbitrable under the agreements. *Chiron Corp.*, 207 F.3d at 1130.

**E.     Arbitrability**

Neither party contends that the arbitrations agreements do not encompass the disputes in Plaintiff's complaint, and the Court, upon its own review, determines that the claims are arbitrable. Plaintiff alleges two federal law claims for discrimination and retaliation, and he alleges five state law claims for unlawful termination, retaliation, and violation of public policy. ECF No. 1. The text of one arbitration agreement specifically includes as arbitrable "tort or statutory claims for harassment, retaliation and discrimination … and claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance." ECF No. 33-3 at Ex. L. The text of the second agreement includes as arbitrable claims for discrimination and reiterates the comprehensive language concerning violations of federal and state laws. ECF No. 33-3 at Ex. R. Based on the plain text of the agreements, Plaintiff's claims are subject to arbitration.

**F.     Dismissal or Stay**

Finally, having determined that two valid arbitration agreements binding the parties exist and that Plaintiff's claims are arbitrable on the face of the agreements, the Court turns to the question of staying or dismissing Plaintiff's action pending arbitration. The Ninth Circuit has held that, "notwithstanding the language of § 3 [of the FAA], a district court may either stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073-74 (9th Cir. 2014). Courts in this District regularly dismiss actions after granting motions to compel arbitration where all of a plaintiff's claims are subject to arbitration. *See, e.g., Gadomski v. Wells Fargo Bank N.A.*, 281 F. Supp. 3d 1015, 1021 (E.D. Cal. 2018); *Ortiz v. Hobby Lobby Stores, Inc.*, 52 F. Supp. 3d 1070, 1089 (E.D. Cal. 2014); *Dealer Computer Servs., Inc. v. Monarch Ford*, No. 1:12-CV-01970-LJO-SKO, 2013 WL 314337, at *5 (E.D. Cal. Jan. 25, 2013); *see also Castaldi v. Signature Retail Servs., Inc.*, No. 15-CV-

11

00737-JSC, 2016 WL 7042991, at *1 (N.D. Cal. Jan. 20, 2016). All of Plaintiff's claims here are subject to arbitration. Accordingly, the Court DISMISSES Plaintiff's action.

## V. CONCLUSION AND ORDER

For all of the foregoing reasons, Defendant's Motion to Compel Arbitration is GRANTED. Plaintiff's case is DISMISSED, and Defendant's pending Motion to Stay, ECF No. 32, is MOOT.

IT IS SO ORDERED.

Dated: **July 9, 2019**              **/s/ Lawrence J. O'Neill**
                                    UNITED STATES CHIEF DISTRICT JUDGE